EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Díaz Fontánez<br>    Recurrido<br><br>         v.<br><br>Wyndham Hotel Corp. h/n/c<br>Wyndham Palmas del Mar<br>Resort & Villas<br>    Peticionaria | Certiorari<br><br>2001 TSPR 141<br><br>155 DPR _____ |

Número del Caso: CC-2000-617

Fecha: 24/octubre/2001

Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI

Juez Ponente:
                    Hon. Carlos Rodríguez Muñiz

Abogados de la Parte Peticionaria:
                         Lcdo. Etienne Totti del Valle
                         Lcdo. Gerardo Fernández-Amy

Abogado de la Parte Recurrida:
                         Lcdo. José M. Acevedo Alvarez

Materia: Despido Injustificado

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Díaz Fontánez

    Recurrido

              v.                       CC-2000-617    CERTIORARI

Wyndham Hotel Corp. h/n/c
Wyndham Palmas del Mar
Resort & Villas

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 24 de octubre de 2001

Mediante recurso de certiorari, comparece ante este Tribunal Wyndham Hotel Corp., h/n/c Wyndham Palmas de Mar, en solicitud de que revoquemos una sentencia emitida por el Tribunal de Circuito de Apelaciones, mediante la cual el foro apelativo intermedio confirmó un dictamen del tribunal de primera instancia, a los efectos de que el demandante había sido despedido sin justa causa[1], y revocó una determinación de dicho foro primario, denegatoria la misma de la reclamación del

---

[1] Ley Número 80 de 30 de mayo de 1976, 29 L.P.R.A. Sec. 185, *et seq.*, mejor conocida como la Ley de Indemnización por Despido Injustificado en Puerto Rico.

demandante por despido discriminatorio por razón de edad.[2]

El tribunal apelativo intermedio fundamentó su dictamen revocatorio en el hecho de que, habiendo determinado el tribunal de primera instancia que el despido del querellante había sido injustificado, dicho foro primario estaba en la obligación de concluir que la presunción de discrimen, establecida por el Artículo 3 de la Ley Núm. 100, 29 L.P.R.A. sec. 148[3], se había activado automáticamente; por lo que, al patrono querellado no refutarla, el tribunal de instancia tenía que haber dictaminado que el despido del demandante también había sido discriminatorio.

I

El 30 de octubre de 1972, el Sr. Luis Díaz Fontánez fue contratado por Palmas del Mar Properties, Inc., como empleado a tiempo indeterminado y asignado al puesto de supervisor del almacén central de mercancía en el departamento de compras y contabilidad del referido complejo hotelero. Sus funciones consistían, de manera principal, en velar porque el inventario del almacén estuviera al día, de recibir y despachar materiales

---

[2] Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146 *et seq.*, mejor conocida como la Ley General contra el Discrimen en el Empleo en Puerto Rico.

[3] Dicho Artículo lee como sigue:

Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible.

y mercancía a tales efectos, y de atender a todos los suplidores que enviaban tal mercancía al hotel. Su posición estaba clasificada como una <u>gerencial</u>, y por su trabajo <u>recibía un sueldo mensual fijo</u>.

Durante el mes de julio de 1985, Palmas del Mar contrató al Sr. Nelson Colón Santiago. A éste se le asignó la posición de ayudante de almacén, y/o "storage attendant". Como parte de las funciones del referido puesto, Colón Santiago colaboraba en el desempeño de las labores llevadas a cabo por el demandante Díaz Fontánez. Su posición era una <u>clerical</u>, lo que se conocía en el hotel como "stock room clerk"; <u>cobraba su salario por horas trabajadas</u>. Ambos empleados se reportaban, diariamente, al almacén general del complejo turístico hotelero, lugar en el cual se recibían y almacenaban artículos y productos de servicios necesarios para la operación del hotel.

Luego de un proceso de negociación, el 20 de diciembre de 1996, se traspasaron todos los activos y operaciones de Palmas del Mar Properties, Inc., a Wyndham Hotel Corp. En virtud de la referida transacción, Wyndham Hotel Corp., se convirtió, a todos los efectos, desde ese día y sin interrupción alguna, en el patrono tanto del demandante Díaz Fontánez como del Sr. Colón Santiago, así como de todos los empleados que desempeñaban labores para Palmas del Mar Properties.

Una vez transcurrió la temporada fuerte de turismo, Wyndham Hotel Corp., comenzó un proceso de reorganización de personal como parte de un plan de reestructuración de las operaciones hoteleras, ello por motivos económicos y a causa del gran número

de empleados que allí laboraban. La automatización de procedimientos y operaciones que se propuso realizar el nuevo patrono, generó, en consecuencia, el despido y cesantía de varios empleados.[4]

Uno de los empleados despedidos, lo fue el demandante Díaz Fontánez. Este laboró como supervisor del almacén central hasta el 27 de junio de 1997, fecha en que, a sus casi setenta años de edad, fue cesanteado a causa de la referida reorganización del complejo hotelero. Hasta esa fecha, Díaz Fontánez había supervisado las labores del Sr. Colón Santiago, quien contaba con treinta y seis años de edad, y quien, contrario al demandante, fue retenido en su empleo. <u>Las funciones que el Sr. Díaz Fontánez realizaba fueron reasignadas, a saber</u>: se le transfirieron algunas de sus responsabilidades al Sr. Aníbal Serrano, Gerente de Servicios o "Service Manager" del hotel; otras le fueron asignadas al agente de compras, y varias de las que Díaz Fontánez llevaba a cabo manualmente, fueron incorporadas a un sistema computadorizado de control de inventario.

A raíz de estos hechos, el 19 de febrero de 1998, Díaz Fontánez radicó una querella contra Wyndham Hotel Corp. ante el tribunal de primera instancia, acogiéndose al procedimiento especial de carácter sumario dispuesto en la Ley Núm. 2 de 17

---

[4] Se despidieron y/o cesantearon veintidós (22) personas de los veintidós (22) departamentos en los que ésta subdividida, organizacionalmente, la Corporación demandada. Tales posiciones o cargos desempeñados por los empleados despedidos pertenecían a su vez a cincuenta y una (51) clasificaciones de

de octubre de 1961, 32 L.P.R.A. secs. 3118-3133. En la misma alegó que Wyndham Hotel Corp. lo había despedido injustificadamente, en violación a las disposiciones de la Ley Núm. 80, ante. Adujo, además, que su despido había sido discriminatorio por razón de su edad ya que a la fecha en que fue notificado del mismo contaba con setenta años y hacía aproximadamente veinticuatro (24) años que laboraba para la peticionaria. Sostuvo en apoyo de tal contención que Wyndham, al momento del despido, lo había reemplazado por el Sr. Colón Santiago, empleado menor de cuarenta años de edad, más joven que él, con menos antigüedad o años de experiencia en el empleo, y a quien precisamente había estado supervisando por los últimos doce (12) años anteriores a su despido; todo ello, estando él cualificado para ejercer y desempeñar las labores del cargo que hasta ese momento ocupaba. En síntesis, alegó que dicha actuación patronal constituyó un despido injustificado y discriminatorio, violando así las disposiciones de la mencionada Ley Núm.80, ante, y de la Ley Núm.100, ante, de manera conjunta.

Wyndham Hotel Corp., compareció y contestó la demanda. Luego de varios trámites procesales, se celebró la vista en su fondo los días 20 y 21 de julio de 1999. Por orden del propio tribunal, comenzó el desfile de prueba con el turno del patrono querellado al disponer dicho foro que le correspondía, en primera instancia, al demandando presentar prueba que

---

empleo, en las que se organizaban los empleados con respecto a sus responsabilidades y funciones.

demostrara que el despido del querellante había sido justificado.[5] En cuanto a la causa de acción por discrimen, <u>específicamente dispuso</u> el tribunal de instancia que, primero, se ventilaría la reclamación por despido injustificado y luego de ésta, se entraría entonces a dilucidar si se había despedido discriminatoriamente al demandante o no.[6]

En cumplimiento de tal orden, el patrono demandado presentó su prueba con el propósito de demostrar que el despido del demandante había sido justificado.[7] A esos efectos prestaron testimonio el Sr. Waldemar Flores Medina, Director de Recursos Humanos del Hotel, y el Sr. Aníbal Serrano, Gerente de Servicios. Se presentó además prueba documental consistente de: i) Memorandos de Personal; ii) descripciones de empleo del demandante y del Sr. Colón Santiago; iii) el expediente personal del demandante; iv) listado del personal que fue cesanteado a causa de la reorganización del hotel, documento en el que se reflejaban las posiciones ocupadas por dichos empleados, su fecha de contratación, además de su fecha de nacimiento; y, v) un esquema organizacional del Departamento de Compras y Contabilidad en el que se reflejaba la posición jerárquica tanto del puesto del Sr. Díaz Fontánez como del Sr. Colón Santiago.

La prueba desfilada por el patrono tuvo el propósito de establecer cuáles eran las funciones básicas del demandante

---

[5] Así lo regula la Sección 185k (a) de la Ley Núm. 80 ante, sobre las alegaciones y contestaciones del patrono querellado.

[6] Véase Exposición Narrativa de la prueba sometida ante el Tribunal de Circuito de Apelaciones; Apéndice a la Petición de Certiorari, a la pág. 91.

como "warehouse supervisor"[8] así como las funciones del Sr.

Colón Santiago, como ayudante de almacén o "storage attendant".[9]

Ambos testigos coincidieron en que el despido del demandante

se había realizado en armonía con las disposiciones referentes

a la antigüedad, según ordenadas por la Ley Núm. 80, ante, y

como parte de un proceso de reducción de personal;

testificaron que la plaza que el demandante ocupaba había sido

eliminada y sus funciones redistribuidas. Tanto sus testimonios

como los documentos admitidos en evidencia reflejaron la

transferencia de algunas responsabilidades del demandante al

Sr. Serrano, al agente de compras, y la automatización del resto

a través de equipo computadorizado.

De otra parte, la prueba del demandante constó de su propio

testimonio, además del testimonio del Sr. Colón Santiago. El

---

[7] 29 L.P.R.A. sec. 185k (a), ante.

[8] Entre éstas se encontraban, a saber, la de: i) recibir y almacenar material requisado por cada uno de los departamentos de Palmas del Mar; ii) mantener un inventario exacto de materiales y suministros; iii) emitir requisiciones de los materiales necesarios para reaprovisionar el inventario del almacén; iv) mantener el sistema de inventario al día; v) mantener documentación escrita que reflejara el "status" del inventario; vi) supervisar las tareas y funciones del "storage attendant", Sr. Nelson Colón Santiago; vii) actuar como agente de recibo e inspeccionar todos los materiales/suministros o equipo recibido, y atender a los suplidores, entre otras funciones.

Véase Exhibit 3 A, Memorando de Personal, admitido en evidencia durante la vista en su fondo celebrada ante el Tribunal de Primera Instancia el día 21 de julio de 1999; según ello consta en el apéndice de la Minuta del tribunal.

[9] Entre éstas, se encontraban, la de: i) recibir físicamente la mercancía para el inventario; ii) colocarla en las góndolas del almacén, manejando, a esos efectos, un "lifter"; e iii) identificar la localización de la mercancía, entre otras funciones.

Sr. Díaz Fontánez señaló cuáles eran sus funciones de trabajo como supervisor de almacén, que el Sr. Colón era su ayudante, que había trabajado para Palmas del Mar desde el año 1972 hasta el año 1997, fecha en que, a sus setenta años, fue despedido. Sostuvo que el Sr. Colón ejercía las mismas funciones que él, y que luego de su despido, era éste último quien únicamente las llevaba a cabo. Por su parte, el Sr. Colón declaró que comenzó a trabajar para Palmas del Mar para el año 1985, bajo la supervisión del Sr. Díaz Fontánez, que lo ayudaba a mantener el inventario del almacén, que era el demandante quien estaba a cargo del almacén, que éste le daba instrucciones de trabajo, pero que, en resumidas cuentas, ambos se complementaban llevando a cabo conjuntamente la tarea principal de mantener el inventario del almacén al día.

Terminado el desfile de la prueba presentado, por ambas partes, el juez que presidió la vista declaró, en corte abierta, no ha lugar a la reclamación del querellante por discrimen al amparo de la Ley Núm. 100, ante[10], razón por la cual no se desfiló prueba a tales efectos. Expresó el magistrado que, a base de la prueba desfilada por ambas partes, no albergaba duda alguna sobre que el despido del demandante no había sido discriminatorio y sobre que el demandante no era acreedor a tal reclamación ni a los remedios provistos por la Ley sobre Discrimen en el Empleo.

---

[10] Ordenó específicamente a las partes someter memorandos de derecho con relación al reclamo por despido injustificado al amparo de la Ley Núm. 80, ante.

El tribunal de primera instancia dictó sentencia el día 23 de septiembre de 1999, archivándose en autos copia de su notificación el día 8 de octubre siguiente, determinando que Díaz Fontánez había sido despedido sin justa causa, por lo que le concedió a éste los beneficios provistos por la Ley Núm. 80, ante, a saber: la mesada correspondiente al periodo durante el cual el querellante laboró para la demandada, además de una partida por concepto de honorarios de abogado. Al así disponer, sostuvo que el despido del querellante fue injustificado por razón de que no se observaron las disposiciones de la Ley Núm. 80, ante, sobre el orden de retención de empleados bajo el criterio de antigüedad[11]. Determinó que el patrono querellado retuvo al Sr. Colón Santiago en el empleo, ello a pesar de tener menos años de experiencia laborando en Palmas del Mar que el demandante, y a pesar de que, a su entender, ambos empleados llevaban a cabo el mismo trabajo. Sostuvo que ambos desempeñaban idénticas funciones aún cuando tuvieran títulos, cargos o puestos de empleo distintos para efectos de las clasificaciones ocupacionales en las que estaba subdividida y organizada la corporación.[12] Finalmente, y conforme había adelantado en corte

---

[11] 29 L.P.R.A. sec. 185c.

[12] Habida cuenta de que el patrono demandado nunca cuestionó el dictamen del Tribunal de Primera Instancia referente al carácter injustificado del despido, no entramos a dilucidar si en efecto dicho foro incidió al llegar a dicha determinación y concluir que el patrono querellado violó las disposiciones sobre antigüedad recogidas en la Ley Núm. 80.

Ello no obstante, debemos mencionar los factores a considerar al momento de surgir controversias con relación a las clasificaciones ocupacionales en que se desempeña un

abierta, el foro de instancia declaró sin lugar la reclamación de discrimen por razón de edad. Determinó que, a su juicio, según los testimonios y la prueba desfilada, no se había desprendido ánimo discriminatorio alguno de los actos llevados a cabo por el patrono al reducir su personal por lo que no se había configurado acción por discrimen por edad a favor del querellante.

Inconforme con tal dictamen, el empleado querellante acudió oportunamente mediante recurso de apelación ante el Tribunal de Circuito de Apelaciones.[13] Mediante sentencia a esos efectos, el foro apelativo intermedio confirmó el dictamen de

---

empleado, a saber: i) las funciones y deberes del puesto; ii) los requisitos para ocupar la plaza, incluyendo los conocimientos y destrezas necesarias así como la preparación académica; iii) forma de compensación y iv) forma en que se realiza el trabajo. Véase Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico, (1996), pág. 39.

> "La función de establecer las clasificaciones ocupacionales en una empresa y determinar en cuál de ellas se desempeña un empleado, constituye una prerrogativa gerencial que de ordinario debe merecer gran deferencia a los tribunales. Estos sólo deben alterar la determinación original del patrono cuando resulta obvio que sostener la misma conllevará un fracaso de la justicia." Id.

[13] En su escrito de apelación alegó la comisión de los siguientes errores:

A.  Erró el Tribunal de Primera Instancia al no disponer la reposición del apelante en el empleo;

B.  Erró el Tribunal de Primera Instancia al rechazar la existencia de discrimen por edad no empece la inexistencia de causa para el despido, el establecimiento prima facie de la presunción de discrimen, constituir una mera excusa la defensa afirmativa del patrono, y no controvertir este la presunción de que el despido lo constituyó el discrimen por edad.

instancia, en cuanto al despido injustificado del querellante, pero revocó el mismo en cuanto el foro primario denegó la reclamación del querellante basada en el alegado despido discriminatorio. Sostuvo que en el presente caso se había activado la presunción de discrimen, dispuesta por el Artículo 3 de la Ley Núm. 100, ante; ello a base de la reclamación por discrimen por edad alegada en la demanda, y de que, durante la celebración de la vista en su fondo, el patrono no rebatió la misma. En consecuencia, concluyó que siendo el despido uno injustificado, el mismo había adquirido automáticamente el carácter de discriminatorio; por lo que, habida cuenta de que el patrono no refutó la presunción de discrimen, el foro de instancia debió aceptar la existencia del hecho presumido, y dictar sentencia conforme a ello.[14]

Por no estar de acuerdo con la actuación del Tribunal de Circuito de Apelaciones, Wyndham Palmas del Mar, acudió en revisión --vía certiorari-- ante este Tribunal. La peticionaria alega que procede revocar la sentencia emitida por el foro apelativo intermedio, revocatoria, en parte, de la emitida por el foro de instancia, debido a que dicho foro apelativo incidió:

> "...al revocar la sentencia del Tribunal de Primera Instancia y resolver que procede aplicar la presunción de discrimen por edad aún cuando el juez sentenciador concluyó a base de la totalidad de la prueba que el despido no fue por razones discriminatorias ni por edad;
>
> ...al intervenir con la apreciación de la prueba y revocar la sentencia, en lugar de devolver el caso

---

[14] Basó principalmente su dictamen en la sentencia emitida por este tribunal en el caso Sandoval Rivera v. Caribe Hilton International, ante.

al foro recurrido y ordenar que se consigne la determinación o determinaciones de hechos en que el Honorable Juez sentenciador apoyó como conclusiones[sic] de derecho que el despido no fue por razones discriminatorias ni por edad;

...al conceder el remedio de reposición en el empleo y no dejar sin efecto el remedio concedido por la Ley 80, siendo ambos remedios incompatibles."

Expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en posición de resolver, procedemos a así hacerlo.

## II

Con el propósito de facilitar la exposición del derecho aplicable al caso de marras, discutimos los primeros dos señalamientos de error de manera conjunta, esto es, analizamos a la luz de los hechos del caso de autos, el proceso probatorio dispuesto para reclamaciones por despido injustificado y discriminatorio, al amparo de la Ley Núm. 80, ante, y la Ley Núm. 100, ante, conjuntamente. En vista a la conclusión a la que llegamos, no discutimos el tercer señalamiento de error por razón de que el mismo resultaría prematuro.

A. Disposiciones generales sobre la Ley de Indemnización por Despido Injustificado–

1. Introducción–

El despido es la ruptura unilateral, que hace el patrono, del contrato individual de trabajo celebrado con uno o varios

trabajadores.[15] "El contrato de alquiler de servicios que se formaliza con el establecimiento de la relación empleado-patrono, constituye en un gran número de casos para los obreros y sus dependientes, el único medio de sustento económico."[16] El rompimiento de dicha relación conlleva, en numerosas ocasiones, la pérdida de tal sustento y del único medio, para una cantidad considerable de personas, de acceso a los artículos y servicios indispensables del diario vivir. Por ello el interés apremiante del Estado de regular las relaciones obrero patronales, de evitar prácticas injustas del trabajo y la existencia, en nuestra jurisdicción, de una clara política pública de proteger los derechos de los trabajadores. Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35 (1986); Charles Zeno Santiago, *El Despido y la Política Social en nuestro Estado de Derecho*, ante.

Con tal finalidad y propósito en mente, se incorporó el estándar de "justa causa" como limitación a toda acción de despido de parte del patrono.[17] Así pues, mediante la aprobación de la Ley Núm. 80, ante, se le brinda a los trabajadores que han sido despedidos sin justa causa, la oportunidad de disfrutar de una indemnización que les permita suplir sus necesidades

---

[15] Charles Zeno Santiago, *El Despido y la Política Social en nuestro Estado de Derecho*, 34 Rev. Jur. U.I.P.R. 213, 214 (2000); véase además Manuel Osorio, Diccionario de Ciencias Jurídicas Políticas y Sociales 104 (1984).

[16] Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico, (1996), pág. 1.

[17] Charles Zeno Santiago, *El Despido y la Política Social en nuestro Estado de Derecho,* ante, a la pág. 213.

básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo. Dicho estatuto define como despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres meses y la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar.[18]

El Artículo 1 de la referida Ley, 29 L.P.R.A. Sec. 185a, establece, a su vez, que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de clase alguna, contratado sin tiempo determinado, y que fuere despedido sin justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el salario correspondiente a un mes por concepto de indemnización, conocida ésta como la indemnización básica, y una indemnización progresiva adicional equivalente a una semana por cada año de servicio. Ruy Delgado Zayas v. Hospital Interamericano, 137 D.P.R. 643 (1994). La compensación en su totalidad constituye el remedio a concederse al empleado, conocido comúnmente como la mesada.

En su Artículo 2, 29 L.P.R.A. Sec. 185b, se dispone, en lo aquí pertinente, que se entenderá como justa causa para el despido, entre otras causas, i) el cierre total, temporero o parcial de las operaciones del establecimiento; ii) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja

---

[18] 29 L.P.R.A. sec. 185e, Definición de Despido.

por el establecimiento y los cambios en los servicios rendidos al público; y iii) reducciones en empleo que se hacen necesarias debido a  reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido[19]. Véase 29 L.P.R.A. Sec. 185b Incisos (d),(e),(f). Las tres razones o "justa causa" previamente mencionadas son las que comúnmente se asocian y son atribuibles al negocio del patrono.[20]

_____

[19] Tal situación se conoce comúnmente en la esfera  federal como los "reductions-in-force scenarios" ("RIF"), y en la mayoría de las ocasiones, se presentan tales reclamaciones al amparo de la Age Discrimination in Employment Act of 1967, 29 U.S.C. sec. 621 *et.seq.*, basándose en la comisión de discrimen intencional.

"The classic way for a plaintiff to establish a *prima facie* case of disparate treatment is to show that: 1) he/she was a member of a protected group; 2) he/she met the employer's legitimate job expectations; 3) he/she suffered an adverse employment action; and 4) a less qualified person not in the protected group was given the job. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Genuine layoff or RIF cases are hard to fit within the McDonnell Douglas (*prima facie*) case framework because plaintiffs terminated during a nonpretextual layoff are not immediately "replaced" and, hence, usually have a difficult time satisfying the fourth prong of the (*prima facie*) test.

The employer's redistribution of work and reassignment of the plaintiff's duties to other retained employees does not constitute "replacement". Devlin v. WSI Corporation, 833 F.Supp. 69, 76 (D. Puerto Rico, 1993); Lilley v. BTM Corp., 958 F.2d 746,752 (6th Cir. 1992), *cert. denied*, 506 U.S. 940 (1992). Given this, it is not surprising that the courts have struggled to find an appropiate variation on the classic (*prima facie*) discrimination case to utilize in the RIF context." Alcides A. Reyes-Gilestra, Survey of Legal Issues in Reductions-in-Force ("RIF"), pág.13,  Conferencia de Derecho Laboral, Educación Jurídica Continua, Facultad de Derecho de la Universidad Interamericana de Puerto Rico en colaboración con Georgetown University Law Center (1999).

[20] En cuanto a las tres razones indicadas dispone el Artículo 3 del estatuto, 29 L.P.R.A. sec. 185c, que:

> En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) de la sec. 185b de este título, el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre

Estas están relacionadas a actuaciones del patrono dirigidas a la administración de su negocio, y principalmente se presentan por razones de índole económica que surgen según la operación diaria de las empresas.

Hemos reiterado, en un sin número de ocasiones, que bajo las disposiciones de la referida Ley constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión.[21]

No podemos perder de perspectiva que el estatuto en cuestión no proscribe la acción del despido. Según nos ilustra el Profesor Luis H. Sánchez Caso, en su artículo *Reflexiones sobre la Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen*, 34 Rev. Jur. U.I.P.R. 183, 210-11 (2000), "nuestro ordenamiento jurídico cobija el poder de dirección empresarial, al reconocerle a los patronos

---

que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleado dentro de su clasificación ocupacional que puedan ser desempeñados por ellos,... siguiéndose también el orden de antigüedad en la reposición excepto, y en ambas situaciones, en aquellos casos en que haya una diferencia clara o inconcursa a favor de la eficiencia o capacidad de trabajadores comparados en cuyo caso prevalecerá la capacidad.

[21] Alberto Acevedo Colom, Legislación Protectora del Trabajo Comentada, Séptima Edición Revisada; San Juan: Ramallo Printing, 2001.

Véase, además, Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979); Báez García v. Cooper Laboratories, Inc., 120 D.P.R. 145 (1987); Santiago v. Kodak Caribbean, 129 D.P.R.

el derecho de despedir a sus empleados, por cualquier razón no discriminatoria. La Ley sobre despido injustificado no prohíbe el despido arbitrario o sin causa. La misma se limita a proveerle al trabajador una asistencia económica, que se le impone al patrono para disuadirlo a ejercer su prerrogativa en casos justificados."

Dicho curso de acción como tal se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial. La disposición legislativa en controversia lo que le concede a la persona despedida injustificadamente es una compensación dirigida a ayudarlo económicamente durante la etapa de transición del empleo que ocupaba al que pueda en un futuro conseguir. De ahí entonces que la propia Ley enumere y defina las circunstancias que envuelven o se consideren justa causa, esto con el propósito de determinar cuándo el patrono puede ejercer dicha prerrogativa sin tan siquiera tener que satisfacer la mencionada compensación, o mesada.

2. Peso de la prueba en reclamaciones al amparo de la Ley de Indemnización por Despido Injustificado-

---

763 (1992); Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P., 130 D.P.R. 983 (1992).

En cuanto al procedimiento a seguir, al entablarse reclamaciones al amparo de la referida Ley 80, el Artículo 8 de la Ley, 29 L.P.R.A. sec. 185k, establece que:

> (a) En toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a *et seq.* de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en  la sec. 185a de este título...

Dicho de otra manera, en una acción por despido injustificado de un empleado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979); Belk Arce v. Martínez, res. el 30 de junio de 1998, 98 TSPR 109. Todo despido que no responda a una justa causa será considerado injustificado, proveyéndose al afectado un remedio exclusivo, la mesada. "De la lectura de este estatuto se advierte una clara presunción: todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción"[22]; Báez García v. Cooper Laboratories, Inc., ante.

Al  patrono interponer como defensa afirmativa haber mediado justa causa para el despido, le corresponde entonces probar, por preponderancia de la prueba, que el mismo estuvo justificado. Delgado Zayas v. Hosp. Interamericano, ante; Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599 (1989); Secretario del Trabajo v. I.T.T., ante.

Así, la norma de que, en toda reclamación judicial, es al reclamante al que le corresponde la obligación de probar con preponderancia de la prueba sus alegaciones para poder prevalecer en el pleito[23], encuentra una excepción en los casos de reclamación de indemnización por despido injustificado radicados al amparo de la Ley Núm. 80, ante. Acevedo Colom, Legislación Protectora del Trabajo Comentada, ante. "En reclamaciones de esta clase, dicha ley dispone que el patrono viene obligado a alegar en su contestación a la demanda o querella los hechos que dieron origen al despido y a probar que el mismo estuvo justificado para quedar exento de pagar la indemnización expresada." Id., a la pág. 184. (Énfasis suplido.)

B.   Disposiciones generales sobre la Ley General de Discrimen en el Empleo-

1. Introducción-

La Constitución del Estado Libre Asociado de Puerto Rico, en su Carta de Derechos, establece que la dignidad del ser humano es inviolable, principio fundamental y rector de respeto hacia todo individuo. Su sección primera específicamente recoge este postulado y reza así: "la dignidad del ser humano es inviolable. Todos los hombres son iguales ante la ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento,

---

[22] Luis O. Meléndez Dones, *Esquemas Probatorios: El Discrimen Intencional al amparo de la Ley Núm. 100 y el Título VII*, 34 Rev. Jur. U.I.P.R. 239, 251 (2000).

[23] Véase a tales efectos, la Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV, R.10, Evaluación y Suficiencia de la prueba.

origen o condición social, ni ideas políticas o religiosas."[24]
En su informe a la Convención Constituyente, la Comisión de la
Carta de Derechos delimitó el propósito y alcance de esta
disposición constitucional y determinó que las leyes
"encarnarán estos principios" de esencial igualdad humana. La
referida Comisión advirtió además que tales postulados "tienen
un vasto alcance cuya implementación detallada requiere acción
legislativa". García Pagán v. Shiley Caribbean, Inc., ante, a
la pág. 198; 4 Diario de Sesiones de la Convención
Constituyente, Sec. 1, pág. 2563 (1951).

Siguiendo tales directrices, ese principio básico y
fundamental, considerado y reconocido por los Constituyentes,
fue ratificado por la Asamblea Legislativa a través de la
aprobación de uno de los estatutos principales y esenciales a
la protección del trabajador puertorriqueño, a saber, la Ley
Núm. 100 de 30 de junio de 1959, según enmendada. "Al aprobar

_____

[24] Constitución del Estado Libre Asociado de Puerto Rico,
Artículo II.

> "El propósito de esta sección es fijar claramente
> como base consustancial de todo lo que sigue el
> principio de la dignidad del ser humano y, como
> consecuencia de ésta, la igualdad esencial de todas
> las personas dentro de nuestro sistema
> constitucional. La igualdad ante la ley queda por
> encima de accidentes o diferencias, bien tengan su
> origen en naturaleza o en la cultura. Todo discrimen
> o privilegio contrario a esta esencial igualdad
> repugna al sistema jurídico puertorriqueño. En
> cuanto fuera menester nuestra organización legal
> queda robustecida por la presente disposición
> constitucional, a la vez que obligada a ensanchar sus
> disposiciones para dar plena realización a lo aquí
> dispuesto." 4 Diario de Sesiones de la Convención
> Constituyente, Sec. 1, pág. 2561 (1951). (Énfasis
> suplido.)

la Ley Núm. 100, *supra*, la Asamblea Legislativa ratificó estos postulados constitucionales y formuló unos remedios para poner en vigor esa disposición de la Carta de Derechos dentro del contexto obrero-patronal." García Pagán v. Shiley Caribbean, Inc., ante, a la pág. 198.

Si bien desde un principio, el legislador pretendió proteger contra el discrimen a las personas de edad avanzada, luego de varias enmiendas a la referida disposición estatutaria, finalmente se dispuso que la edad dentro de la cual se prohíbe discriminar es desde la edad mínima en que legalmente se permite trabajar en adelante; dicho de otra manera, no hay un límite específico de edad protegida para un empleado poder entablar su reclamación al amparo de la Ley Núm. 100, ante.[25]

Puesto en vigor dicho principio, el Artículo 1 de la referida Ley 100 dispone que incurrirá en responsabilidad civil, todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status como empleado, por razón de edad,

---

[25] Véase Ley Núm. 67 de 3 de junio de 1983; Ley Núm. 32 de 8 de diciembre de 1990.

El término "edad" significa cualquier edad desde la mínima en que legalmente se permita trabajar a los menores, de acuerdo con la ocupación o industria

según ésta se define más adelante,...del empleado o solicitante de empleo...[26].

Tal y como mencionáramos previamente, la mencionada disposición legislativa, como parte de una serie de estatutos que prohíben el discrimen en el empleo en sus diversas modalidades[27], implanta la política constitucional y establece responsabilidad civil y criminal contra los patronos que discriminen en el reclutamiento, en los términos y condiciones de empleo, y despidan de tal manera a algún empleado suyo, legitimando al empleado discriminado a entablar una causa de acción en daños y perjuicios. El obrero o trabajador víctima de tal actuación o decisión patronal, al demandar civilmente a su patrono, "se convierte en fiscalizador del cumplimiento de la ley y de la implantación de la política pública que promueve la esencial igualdad."[28]

2.  Peso de la prueba en reclamaciones al amparo de la Ley General contra el Discrimen en el Empleo-

Al interpretar el alcance de la Ley Núm. 100, deben tomarse en consideración los valores sociales y económicos recogidos en la legislación laboral; esto es, proteger a la masa

---

de que se trate, sin límite alguno. 29 L.P.R.A. sec. 151 (1).

[26] 29 L.P.R.A. sec. 146 (a)(1).
[27] Véase, además de la Ley Núm. 100, ante, la Ley Núm. 39 de 19 de junio de 1969, 29 L.P.R.A. secs. 467-469; Ley Núm. 69 de 6 de julio de 1985, 29 L.P.R.A. secs. 1321-1341; Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155-1551; Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. secs. 147 *et.seq.*, entre otras.
[28] Sánchez Caso, *Reflexiones sobre la Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen*, ante, a la pág. 192.

trabajadora contra el discrimen en el empleo y en el reclutamiento, interpretando siempre tales estatutos de la manera mas favorable al empleado víctima de actuaciones discriminatorias e injustificadas.[29] Ello no significa, sin embargo, que no se tenga que realizar un adecuado balance entre tal protección a los empleados y el valor e interés patronal, también protegido, de velar por las prerrogativas gerenciales que el sistema económico le reconoce a éste último.

En reclamaciones obreras, al amparo del Título VII de la Ley Federal de Derechos Civiles[30] y de la Ley Federal contra el Discrimen en el Empleo por razón de edad[31], se ha creado un esquema probatorio para la alocación de turnos o pesos de prueba.[32] En el ámbito local, se ha desarrollado un esquema un

---

[29] Id., a la pág. 201.

[30] La Ley Federal de Derechos Civiles de 1964, 42 U.S.C. §§ 1981-2000h-6; según enmendada por la Ley Federal de Derechos Civiles de 1991, 42 U.S.C. §§ 1981a.

[31] Age Discrimination in Employment Act of 1967, 29 U.S.C. sec. 621 et.seq.; A.D.E.A, por sus siglas en ingles.

[32] Véase Joel Friedman & George M. Strickler, The Law of Employment Discrimination, Cases & Materials, 4th Ed., New York: University Casebook Series, 1997; Mark A. Rothstein & Lance Liebman, Employment Law, Cases & Materials, 4th Ed., New York: University Casebook Series, 1998.

Como es harto reconocido, en acciones por discrimen intencional y, en ausencia de prueba directa del motivo discriminatorio y/o discrimen, para que un empleado víctima de discrimen por edad tenga éxito en su reclamación al amparo del estatuto federal (ADEA), éste tiene la obligación procesal de probar, vía preponderancia de la prueba, un caso prima facie de discrimen, estableciendo la existencia de los requisitos dispuestos en el caso McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), para reclamaciones instadas al amparo del Título VII de la Ley Federal de Derechos Civiles de 1964. A saber, demostrar que: i) pertenece al grupo protegido por el estatuto; ii) que fue despedido o fue víctima de una acción o

decisión patronal; iii) que está calificado para ocupar su puesto; iv) que fue reemplazado por alguien más joven. Ciertamente, estos son los hechos básicos que dan lugar al establecimiento del caso *prima facie* de discrimen por edad, y en consecuencia a la creación de una presunción de que la parte demandada ha llevado a cabo la acción perjudicial contra el empleado movida por un ánimo discriminatorio. Véase además la Ley Federal de Derechos Civiles de 1964, 42 U.S.C. §§ 1981-2000h-6; según enmendada por la Ley Federal de Derechos Civiles de 1991, 42 U.S.C. §§ 1981a.

Dicho esquema de prueba se utiliza con el propósito de lograr esclarecer, mediante evidencia circunstancial y el beneficio de presunciones e inferencias, si hubo o no intención o ánimo discriminatorio en la mente de la persona que tomó la decisión adversa de empleo. Ante la presencia de prueba directa de discrimen, el caso *prima facie* es inaplicable. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621 (1985); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 782 (1st Cir. 1990); Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988).

Una vez se establece el referido caso *prima facie* de discrimen, se transfiere al demandado únicamente el peso de producir y/o presentar evidencia, no el de probar, que la acción o decisión de empleo fue llevada a cabo obedeciendo a una razón legítima, no discriminatoria, y válida de negocio.

Logrado esto, se desvanece rápidamente la presunción débil que obraba en contra del demandado, y entonces el demandante tiene una última oportunidad de convencer y persuadir al juzgador de hechos de que, a pesar que el patrono derrotó el caso *prima facie*, la razón que éste último articuló en su defensa, fue un mero pretexto detrás de su intención y ánimo de discriminar, y que realmente la decisión patronal fue tomada por motivos exclusivamente discriminatorios. La ausencia de credibilidad de la razón articulada por el patrono demandado no es suficiente de por sí para que prevalezca el empleado demandante en su caso de discrimen. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742 (1993). A éste ultimo turno de prueba se le conoce comúnmente como el turno del "pretexto-plus", pues aparte de probar que la razón que ofreció el demandado fue un pretexto destruyendo su credibilidad, todavía se le impone al demandante la obligación de probar que hubo discrimen para así poder prevalecer ante el patrono demandado. Id., págs. 507-512.

En el ámbito federal, la parte demandante siempre tiene el peso de persuadir y/o convencer al juzgador de la existencia del discrimen, de que la decisión fue tomada por motivos discriminatorios. Este retiene en todo momento el peso de probar su caso, ya sea con prueba directa o circunstancial. El peso

tanto distinto, pero similar a su vez en estructura, al amparo de La Ley Núm. 100. Esta, aunque menos detallada que su contraparte federal, la A.D.E.A., sí contiene una disposición específica en cuanto a la presunción de discrimen.[33]

La referida presunción la encontramos en el Artículo 3 del mencionado estatuto. Dicho Artículo lee como sigue:

> Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible.[34]

Para activar la presunción de discrimen, el empleado demandante tiene que probar tres elementos: (1) que hubo un despido o acción perjudicial; (2) que éste se realizó sin justa causa; (3) presentar evidencia indicativa de la modalidad de discrimen que se vincula al despido. Es en ese momento que se activa la presunción. Hernández v. Trans Oceanic Life

---

de la prueba permanece inalterado en todo momento en la parte que originalmente lo tenía. Esto en referencia y a base de la Regla 301 de Evidencia Federal, y el "Bursting Bubble Theory". Véase además Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

[33] Ibáñez v. Molinos de P.R., ante, a la pág. 50. El estatuto federal carece de una disposición que establezca una presunción de discrimen.

[34] En cuanto a la manera y forma de activar la referida presunción, en cuanto al peso de la prueba y en cuanto a los turnos de presentación de evidencia durante la celebración de una vista cuando se insta una causa de acción por un despido injustificado y discriminatorio, y no por otra acción o decisión patronal distinta al despido, encontramos varias expresiones de este Tribunal. Véase a tales efectos, la más reciente, Hernández v. Trans Oceanic Life Insurance, ante; Alberty Marrero v. Rodríguez Emma, ante; Sandoval Rivera v. Caribe Hilton, ante; Belk Arce v. Martínez, ante.

Insurance, ante; Belk Arce v. Martínez, ante. Ciertamente, estas circunstancias o hechos básicos varían dependiendo del contexto en que se dé la decisión de empleo y a base del tipo o modalidad de discrimen que se esté alegando. Con la presentación de prueba a tales efectos, se establecen los hechos básicos que dan lugar a la presunción dispuesta en el referido artículo de ley.

La presunción del Artículo 3 entra en juego en la etapa probatoria del caso, esto es, se activa durante la celebración de la vista evidenciaria en su fondo, no antes.[35] El mencionado Artículo "no altera en su totalidad el esquema probatorio que prevalece en nuestra jurisdicción, donde una vez presentada la demanda, le corresponde a la parte demandante en la vista en su fondo comenzar con la presentación de la prueba de sus alegaciones, antes de que la parte demandada venga obligada a rebatirla." Si la parte demandante, durante el primer turno de la prueba, no presenta evidencia suficiente para sostener sus alegaciones, la parte demandada no tiene que defenderse. La presunción establecida en el Artículo 3 lo que pretende es facilitarle al empleado demandante el probar su reclamación, no relevarle de la necesidad y obligación de presentar evidencia para probar sus alegaciones. Hernández v. Trans Oceanic Life Insurance, ante.

Aun cuando las presunciones no constituyen evidencia propiamente, sí se encuentran definidas en nuestro ordenamiento probatorio, ya que es a través de éstas que, precisamente, el

juzgador de hechos hace inferencias de la evidencia admitida; "...las presunciones no son evidencia, sino reglas para hacer inferencias a partir de la evidencia presentada y admitida."[36] La Regla 13(A) de Evidencia[37], dispone que "una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos <u>previamente establecidos en la acción</u>. A ese hecho o grupo de hechos previamente establecidos se le denomina hecho básico; al hecho deducido mediante la presunción se le denomina hecho presumido." (Énfasis nuestro.)

Existe un fuerte vínculo entre las presunciones y las cargas probatorias.[38] En casos civiles, la obligación de presentar evidencia y persuadir al juzgador de la existencia de los elementos esenciales de una reclamación, siempre recae sobre el demandante. La Regla 10(A)[39] de Evidencia así lo dispone, "el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes." <u>Ciertamente las presunciones afectan tal carga probatoria</u>; "aunque inicialmente las cargas probatorias estén en una misma parte, esto puede cambiar por efecto de

---

[35] <u>Hernández v. Trans Oceanic Life Insurance</u>, ante.

[36] Ernesto L. Chiesa, <u>Tratado de Derecho Probatorio</u>, Tomo II, Publicaciones JTS, 2000, págs. 1087-88. Véase además, Rolando Emmanuelli Jiménez, <u>Prontuario de Derecho Probatorio Puertorriqueño</u>, República Dominicana: Editora Corripio, 1994.

[37]   32 L.P.R.A. Ap. IV, R.13(A), Definiciones.

[38]   Ernesto L. Chiesa, <u>Tratado de Derecho Probatorio,</u> ante, a la pág. 1094.

[39]   32 L.P.R.A. Ap.IV, R.10(A), Evaluación y Suficiencia de la prueba.

presunciones." Consecuencia de esto es el efecto fuerte y mandatorio de la presunciones, el cual luego de activarse una presunción de tal clase, se transfiere y, prácticamente, se obliga al querellado a presentar prueba, probar y persuadir al juzgador sobre la no existencia del hecho presumido. Regla 14 de Evidencia.

Por tal razón, y por imperativo del debido proceso de ley, se exige la existencia de un <u>vínculo racional</u> entre el hecho básico y el presumido.[40] Nos ilustra el Prof. Ernesto L. Chiesa en su <u>Tratado de Derecho Probatorio</u>, ante, a la pág. 1104:

> El debido proceso de ley no tolera la arbitrariedad procesal, ni siquiera en la esfera civil. Las verdaderas presunciones son reglas de inferencia y hay una exigencia de vínculo racional entre hecho básico y hecho presumido, aun en casos civiles. La Asamblea Legislativa tiene discreción para poner y quitar elementos a una causa de acción, acusación o defensa; pero si opta por incluir un hecho como elemento, su regulación inferencial no puede ser arbitraria. De ahí que pueda afirmarse que "the courts articulate a 'rational connection' test in civil cases, which requires that such a connection exist between the basic facts in order for the presumption to pass constitutional muster." Tal vínculo no tiene que ser fuerte no estar basado exclusivamente en probabilidades, pero debe haber algún vínculo racional mínimo, independientemente de si la presunción afecta el peso de la prueba o sólo la obligación de presentar evidencia.

Por ello la obligación del demandante de aportar prueba que establezca los hechos básicos que dan lugar a la presunción y de que, ante la mención de que una alegación de discrimen crea una "fuerte inferencia", este Tribunal, determinó claramente

---

[40] Ernesto L. Chiesa, *Sobre la validez constitucional de las presunciones*, XIV (2) Rev. Jur. U.I.P.R. 727 (1980); Véase además <u>McGrillis v. Aut. Navieras de P.R.</u>, 123 D.P.R. 113 (1989).

en <u>McGrillis v. Aut. Navieras de P.R.</u>, ante, a la pág. 141, que "la mera alegación de un hecho básico, sin que haya sido debidamente establecido, no activa una presunción que permita la inferencia de un hecho presumido." De otra manera, no sería posible ni razonable exigirle al demandado el que derrote una presunción sostenida solamente por una alegación.

Sabido es que el efecto de la mencionada presunción es el de transferir al demandando no sólo el peso de producir evidencia sino el de persuadir; dicho propiamente, el efecto que le da la Regla 14 a esta presunción es el de que se desplace el peso de la prueba totalmente de una parte a otra. En consecuencia, la parte querellada tiene la obligación de probar la no ocurrencia del hecho presumido, vía preponderancia de la prueba, o sea, probar que la no ocurrencia del hecho presumido es más probable que su ocurrencia, so pena de que si no presenta prueba en contra del hecho presumido o en apoyo de su no ocurrencia, el juzgador tendrá que inferirlo.[41]

C. <u>Proceso probatorio en reclamaciones por despido discriminatorio al amparo de la Ley Núm. 100 y la Ley Núm. 80, conjuntamente-</u>

---

[41] <u>Ibáñez v. Molinos de Puerto Rico</u>, ante, a la pág. 53; "la presunción establecida por nuestra Ley Núm. 100, contra discrimen, significa que el patrono demandado viene obligado a probar que el despido no fue discriminatorio. Nuevamente es preciso señalar la diferencia con la doctrina federal. En nuestra jurisdicción no es necesario que el patrono afirmativamente "articule" una explicación razonable para el despido, aunque en la práctica ésta sería la forma más certera y conveniente de destruir la presunción. Basta con que pruebe, aun mediante evidencia circunstancial, que la razón para el despido no fue discriminatoria para que la presunción quede destruida. Esto último, sin embargo, ha de hacerse mediante preponderancia de la prueba, lo que representa un quantum mayor de prueba que el exigido en la jurisdicción federal."

En casos por discrimen al amparo de la Ley Núm. 100, la presunción dispuesta en dicho estatuto, incluye todas las modalidades de discrimen proscritas bajo el mismo. Ciertamente, no todas las modalidades de discrimen se configuran por la existencia de unos mismos hechos básicos; todas y cada una de las referidas modalidades requieren la existencia de distintos hechos base, i.e. una reclamación por discrimen por edad se configura de manera distinta a una por discrimen por sexo.

Por otra parte, no todo despido injustificado es discriminatorio a su vez; y, por el contrario, todo despido discriminatorio sí es injustificado. Es por ello, que se hace necesario que el demandante, que reclama los remedios y beneficios de la Ley Núm.100, ante, pruebe ciertos hechos básicos, para que así se configure la modalidad de discrimen reclamada. Por tal razón, el esquema probatorio u orden de las alegaciones establecido por la Ley Núm. 80, ante, en reclamaciones por despido injustificado únicamente, varía en cierta manera, cuando el empleado demandante opta por instar su reclamación al amparo de dicho estatuto en conjunto con la Ley Núm. 100, ante.

Como señaláramos anteriormente, sobre el peso de la prueba en casos por despido injustificado, el patrono demandando tiene la carga probatoria de, en primera instancia, demostrar y probar que la decisión sobre despido que tomó estuvo justificada. Por otra parte, y como también discutiéramos previamente, en reclamaciones al amparo de la Ley Núm. 100, ante, para que la presunción de discrimen allí dispuesta se

active, el empleado demandante tiene que desfilar prueba, en primera instancia, a los efectos de que, en términos generales, el juzgador de los hechos tenga una base racional y motivo para poder inferir que la acción patronal se llevó a cabo por razones discriminatorias.

Por tal razón, en aras de uniformar el proceso evidenciario bajo ambos estatutos y conformarlo con el derecho vigente y con las normas procesales que regulan nuestro derecho probatorio y son aplicables a casos de discrimen, se crea una variante o situación especial. Mediante ésta, el empleado demandante, que reclama la protección de ambos estatutos, tiene el deber de alegar en su demanda la ausencia de justa causa y luego, durante el primer turno de prueba, probar ciertos elementos básicos de su reclamación por discrimen para que quede activada la presunción dispuesta por ley.

En acciones por despido discriminatorio, el demandante tiene el peso de la prueba, como en cualquier otra acción civil, para demostrar el elemento esencial de que su despido fue discriminatorio.[42] "Lo que ocurre es que la presunción le alivia la carga si establece los hechos básicos que la activan, esto es, que fue despedido, sin justa causa y que está ubicado dentro de la modalidad del discrimen bajo el cual reclama."[43] Una vez activada la misma, es que la parte demandada tiene la obligación

---

[42]     Ernesto L. Chiesa, *Derecho Probatorio*, ante; intepretando opinión de conformidad emitida por el Juez Asociado señor Hernández Denton en el caso Hernández v. Trans Oceanic Life Insurance, ante.

[43]     Id., a la pág. 597.

de persuadir al juzgador de la no existencia del hecho presumido, no antes.[44]

De esta manera, tratamos de configurar un enfoque probatorio que balancee justamente el deber de brindarle al reclamante la oportunidad de probar sus alegaciones de discrimen, y por otro lado, proteger al demandado de pleitos deficientes, exigiéndole al demandante un grado razonable de apoyo probatorio.[45] Ciertamente al tener la mayor parte de la legislación obrera el propósito central de erradicar el discrimen en nuestra sociedad, se deben analizar tales disposiciones estatutarias de manera armoniosa; así se evitan "interpretaciones que conduzcan a resultados irrazonables o absurdos, o que den lugar a distinciones que carezcan de fundamento racional." García Pagán v. Shiley Caribbean, ante, a la pág. 202.

En reclamaciones por despido discriminatorio por edad específicamente, el demandante tiene que presentar prueba

---

[44] "La utilización del caso *prima facie* como elemento catalítico o iniciador de la activación de una presunción, no es ajeno a nuestra realidad procesal y legal. En conclusión, la presunción de discrimen se activaría al configurar una especie de caso *prima facie* al que podríamos llamar: *caso prima facie tipo Ley Núm. 100*, consistente en alegar la ausencia de justa causa patronal, y al probar, por lo menos, los hechos básicos anteriormente mencionados." Meléndez Dones, *Esquemas Probatorios: El Discrimen Intencional al amparo de la Ley Núm. 100 y el Título VII*, ante, a la pág. 267.

[45] Véase David M. Helfeld, *Derecho Laboral*, ante, a la pág. 454. Lo más razonable "es sostener que si el demandante establece que está en las categorías de discrimen y el demandado no establece justa causa para el despido, se activa la presunción de despido discriminatorio, con el efecto de que la carga probatoria (preponderancia de la evidencia) la tiene el

en el primer turno, que tienda a establecer, por ejemplo, que

i) pertenece a la clase protegida por el estatuto, a saber, su

edad; ó ii) que estaba cualificado para ejercer el puesto que

ocupaba; ó iii) que fue despedido, ó iv) que fue sustituido por

una persona más joven, esto es, algún hecho base que

lo  ubique dentro de la modalidad de discrimen bajo la cual

reclama. Es menester advertir que el empleado no tiene que

probar todos y cada uno de estos elementos, ya que, de así

requerírsele, se le estaría exigiendo que cumpla con una

obligación procesal que no le corresponde llevar a cabo al

instar su reclamación por discrimen estrictamente bajo las

disposiciones de la Ley Núm. 100, ante, local.[46] Véase, a tales

efectos, Hernández v. Trans Oceanic Life Insurance, ante.

Llegado tal momento, el demandado tiene varias opciones

o alternativas. Desde el ámbito del derecho probatorio, el

demandado puede atacar o destruir la presunción en tres formas

distintas, a saber: derrotar el hecho básico, esto es, la

ausencia de justa causa[47]; destruir el hecho presumido, esto es,

---

demandado en relación con el elemento esencial de la causa de acción (que hubo un discrimen ilegal)." Id., a la pág. 599.

[46] Obligación procesal que, como es sabido, sí se le requiere llevar a cabo al demandante que reclama bajo las disposiciones del estatuto federal que proscribe el discrimen por edad, a saber, la A.D.E.A.

[47]  Aun cuando la Ley Núm. 100, no contenga una definición de lo que constituye justa causa para un despido, en buena hermenéutica, recurrimos al principio de aplicar e interpretar otras leyes "in pari materia"; ciertamente, "las disposiciones sobre justa causa de la Ley de Despido Injustificado sirven de punto de referencia al interpretar la Ley Núm. 100." Báez García v. Cooper Laboratories Inc., ante, a la pág. 155; véase además Beauchamp v. Holsum Bakers of P.R., 116 D.P.R. 522, 526-527 (1985).

que el despido se debió a razones discriminatorias; y la última opción, atacar o destruir ambos hechos, el básico y el presumido. Alberty Marrero v. Rodríguez Emma, ante.

Derrotada la presunción, si es que el patrono tuvo éxito en tal tarea probatoria, le corresponde entonces al empleado demandante presentar prueba dirigida a establecer la existencia del discrimen. Belk Arce v. Martínez, ante; esta vez sin el beneficio o ayuda de la referida presunción. Hernández v. Trans Oceanic Life Insurance, ante.

Si luego de presentada la totalidad de la prueba, queda demostrado que no hubo ánimo o intención discriminatoria en el despido, pero el demandado no logró establecer una justificación razonable para el mismo, esto es, no probó la justa causa, el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, exclusivamente, a los remedios establecidos en la Ley Núm. 80, ante. Si, por el contrario, el tribunal determina que el despido efectivamente fue discriminatorio y, por ende, injustificado, entonces procederá a imponer los remedios provistos por la Ley Núm. 100, ante, exclusivamente.

A fin de cuentas, el proceso probatorio en casos por despido injustificado y discriminatorio ventilados al amparo de ambos estatutos conjuntamente, a saber la Ley Núm. 80 y la Ley Núm. 100, es uno compuesto por tres turnos de prueba y no de dos como en reclamaciones al amparo de la Ley Núm. 80 únicamente.

D.   Aplicación a los hechos-

Examinada la prueba de autos, y según se desprende del expediente, ante la reclamación por despido discriminatorio que hiciera el Sr. Luis Díaz Fontánez contra su patrono Wyndham Hotel Corp., esta última negó la mayoría de las alegaciones y adujo, en síntesis, que la cesantía del empleado Díaz Fontánez fue una justificada, ello por razón de que su despido se realizó en estricta armonía con las disposiciones de la Ley Núm. 80, ante, y como parte de un proceso de reorganización de la corporación por motivos económicos. Sostuvo que el despido del demandante había sido producto de la reducción de personal resultante de tal reorganización. Alegó que en virtud de tal proceso, la plaza que el demandante ocupaba había sido eliminada y las funciones inherentes a tal cargo redistribuidas, de manera que el demandante no había sido reemplazado por ningún otro empleado.

Llegado el día de la celebración de la vista en su fondo, recordaremos que el tribual de instancia específicamente dispuso que, primero, ventilaría la reclamación por despido injustificado y, luego de ésta, se entraría entonces a dilucidar si se había despedido discriminatoriamente al demandante o no.[48] De conformidad con dicha orden, el demandado comenzó el desfile de su prueba, tendente la misma a establecer la justa causa para el despido. A esos efectos, presentó prueba para demostrar que el querellante era el único empleado en su clasificación ocupacional y que como tal fue despedido en cumplimiento con

los criterios de antigüedad recogidos en la referida Ley Núm. 80, los cuales disponen sobre el orden de retención de empleados al momento de efectuarse alguna cesantía por razón de reorganización patronal, y, que al ser sus funciones redistribuidas, el Sr. Colón no lo había reemplazado; que siendo tal la situación, no se había configurado causa de acción alguna por discrimen en el empleo a favor del demandante; sostuvo que, estando la posición ocupada por el Sr. Colón Santiago bajo una clasificación ocupacional distinta a la del demandante, no estaba en la obligación de retener a este último en su empleo de manera preferente al Sr. Colón.

El demandante, por su parte, con el propósito de refutar la prueba antes señalada declaró sobre cuáles eran sus funciones de trabajo como supervisor de almacén; que el Sr. Colón era su ayudante, que había trabajado para Palmas del Mar desde el año 1972 hasta el año 1997, fecha en que, a sus setenta años, fue despedido. Sostuvo que el Sr. Colón ejercía las mismas funciones que él, y que luego de su despido, era este último quien únicamente las llevaba a cabo.

Como señaláramos anteriormente, luego de los referidos dos turnos de prueba, el juez que presidió la vista declaró, en corte abierta, no ha lugar a la reclamación del querellante por discrimen al amparo de la Ley Núm. 100, ante, razón por la cual el demandado no pudo, ni tuvo que, presentar prueba sobre ese aspecto.

---

[48]     Véase Exposición Narrativa de la prueba sometida ante el Tribunal de Circuito de Apelaciones; Apéndice a la Petición de

Dicho de otra forma, asumiendo a los fines de la argumentación que la prueba que presentara el demandante —la cual tuvo el propósito principal de refutar la prueba de la parte demandada sobre la existencia, o no, de justa causa para el despido— hubiera establecido los hechos básicos que activan la presunción de discrimen bajo la antes citada Ley 100, la acción o determinación del tribunal de instancia, tomada en corte abierta, relevó o privó a la parte demandada de su derecho a refutar la presunción que establece la citada Ley 100.

No podemos confirmar la imposición de responsabilidad, bajo estas circunstancias, en contra del patrono querellado. Ciertamente, Wyndham tiene el derecho de poder demostrar que la razón real para el despido no fue una discriminatoria, aun cuando el foro primario haya determinado que dicha razón había sido injustificada.[49]

El erróneo curso decisorio del foro apelativo requiere que hagamos lo que dicho foro debió haber hecho; esto es, devolver el caso al foro de instancia con el único fin de que éste dilucide la reclamación de discrimen, dándole así la oportunidad al demandante de utilizar el beneficio de la referida presunción y al patrono querellado de refutarla.

Se dictará Sentencia de conformidad.

---

Certiorari, a la pág. 91.

[49] Véase a tales efectos, Belk Arce v. Martínez, ante: si luego de presentada la totalidad de la prueba, queda demostrado que no hubo motivos discriminatorios para el despido, pero el demandado no logró establecer una justificación razonable para su acción, el tribunal deberá concluir que el despido fue injustificado, mas no discriminatorio.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Díaz Fontánez

    Recurrido

         v.                  CC-2000-617      CERTIORARI

Wyndham Hotel Corp. h/n/c
Wyndham Palmas del Mar
Resort & Villas

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 24 de octubre de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al tribunal de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri concurren en el resultado sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo