R & R SHOE CORP., demandante y recurrente, *v.* JOAQUÍN GARCÍA RODRÍGUEZ, ETC., demandados y recurridos.

*Número:* R-66-77 *Resuelto:* 12 de diciembre de 1967

572

*Baragaño, Trías, Saldaña, Harris & Francis* y *Guillermo Nigaglioni,* abogados de la recurrente; *Rodríguez Ema & Rodríguez Ramón, Rodolfo Zequeira* y *Nicolás Jiménez,* abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La recurrente solicita que revisemos una sentencia sumaria dictada en su contra por el Tribunal Superior, Sala de

San Juan. Expedimos el auto pero luego de estudiado el caso incluyendo la Sentencia del Tribunal Superior, los extensos alegatos, los documentos que obran en autos y la Ley y los Reglamentos aplicables, concluimos que debemos confirmar la sentencia recurrida.

Los hechos pueden resumirse como sigue. Los demandados-recurridos son dueños de un edificio sito en la Avenida Borinquen, en Santurce, P.R. Dicho edificio, el cual se construyó en el año 1918, se encontraba para los años anteriores al 1954 dividido en dos locales. El local de la izquierda, entrando, ocupaba aproximadamente el 25% del área del edificio. Para fines del 1954 y principios del 1955 se llevaron a cabo reformas en el edificio. El local de la derecha, entrando, que ocupaba aproximadamente el 75% del edificio, fue subdividido en seis locales. Hace más de diez años, en 3 de agosto de 1956, la Administración de Estabilización Económica fijó los cánones de los seis locales de la derecha en $142.00 mensuales cada uno y el canon del local de la izquierda en $140.00.(¹)

En marzo de 1957 el demandado obtuvo permiso del Negociado de Permisos de la Junta de Planificación para hacer mejoras sustanciales en el local de la izquierda. Terminadas dichas mejoras, las cuales más adelante se mencionan, el demandado arrendó el local a la recurrente. El contrato de arrendamiento se hizo mediante escritura pública, suscrita en 3 de mayo de 1957. Compareció por la arrendataria su Presidente el Sr. V. Rypar.

Pactaron las partes en la escritura que el local que motiva este litigio constaba, desde la obra de 1957, de dos locales comerciales de 1851 pies cuadrados cada uno; que el canon mensual por ambos locales sería de $500.00 ($250.00 cada uno); que el término del arrendamiento sería por dos años, comenzando en 1ro. de junio de 1957, con opción a favor de

---

(¹) En *García* v. *Tribunal Superior*, 82 D.P.R. 673 (1961) confirmamos dicha acción administrativa.

la firma arrendataria de 4 extensiones de dos años cada una, lo cual traía al arrendamiento hasta el 31 de mayo de 1967 si la arrendataria ejercitaba todas las opciones de extensión. Ni el arrendador ni la arrendataria solicitaron de la Administración de Estabilización Económica que reajustara el canon por motivo de la obra hecha en el año 1957. La arrendataria entró en posesión del local y pagó el canon mensual convenido por aproximadamente ocho años.

En noviembre de 1962 la arrendataria y aquí demandante-recurrente, solicitó del arrendador una extensión adicional del arrendamiento por diez años a partir del 31 de mayo de 1967, fecha en que el contrato vigente vencería, como antes hemos señalado. El arrendador no accedió a la extensión adicional de diez años. En 12 de enero de 1964 falleció el Sr. V. Rypar, Presidente de la corporación demandante. En 15 de marzo de 1965 la firma demandante, representada ahora por su nueva Presidenta, la viuda del Sr. Rypar, presentó demanda en el Tribunal Superior, Sala de San Juan, contra los recurridos por $33,788.33 por concepto de alquileres cobrados en exceso y por $8,626.80 adicionales por concepto de daños triples a tenor con la Ley de Alquileres Razonables. Por acuerdo entre las partes la demandante desalojó el local en 15 de marzo de 1966, un año después de la radicación de la demanda. La reclamación total de la demandante es de $46,728.53.

El demandado-recurrido, Joaquín García Rodríguez, solicitó al tribunal que dictara sentencia sumaria declarando sin lugar la demanda, acompañando la moción de sentencia sumaria con copia de una declaración jurada, copia de la escritura del contrato de arrendamiento y copia de la Orden Administrativa Núm. 4 promulgada el 11 de junio de 1948 por el Administrador de Inquilinato de Puerto Rico.

En su declaración jurada, el demandado declaró que el 3 de agosto de 1956 la Administración de Estabilización Económica de Puerto Rico había fijado un canon de arrenda-

miento de $140.55 mensuales para el local comercial objeto de este litigio, que lleva el número 2260 de la Avenida Borinquen; que durante el año 1957 llevó a cabo mejoras fundamentales en el mismo, las cuales detalla en la declaración; que después de la obra de reconstrucción alquiló el local a la demandante-recurrente por un canon mensual de $500.00; y que entre lo invertido en la obra y lo entonces existente hay una inversión de $50,000.00.

Las mejoras que describe el demandado en su declaración jurada incluyen, entre otras, una ampliación del local en aproximadamente 400 pies cuadrados, reconstrucción del piso con losetas, repicado de las paredes y empañetado de las mismas, instalación eléctrica nueva, reformas al techo, plafón nuevo, construcción o reconstrucción de servicios sanitarios, portón nuevo para el patio, ventanas nuevas con rejas y dos puertas nuevas al frente. Para la ampliación antes mencionada se hizo torta nueva de concreto armado, piso con losetas, paredes nuevas y vitrinas de cristal.

Presentada la solicitud de sentencia sumaria por parte del demandado, la demandante presentó una moción solicitando que se denegase dicha sentencia sumaria o que se suspendiese la vista para tener así tiempo de obtener prueba para contradecir lo presentado por el demandado. Alegó la demandante en su moción que existía una controversia sobre los hechos pero que "se le ha hecho imposible obtener contradeclaraciones juradas para justificar adecuadamente su oposición a la moción de sentencia sumaria."

La demandante acompañó su moción con una declaración jurada de la señora Jarmila Rypar en la que declara que es Presidente de R & R Shoe Corporation; que leyó la declaración jurada del señor Joaquín García; que las mejoras alegadamente realizadas fueron anteriores a la fecha en que la R & R Shoe Corporation arrendó el local; que no habiendo sido ella quien celebró el contrato de arrendamiento, sino el Sr. Vladyslav Rypar, quien falleció, se le hace imposible

determinar con absoluta precisión la veracidad de lo expuesto en la declaración jurada del Sr. Joaquín García; y que por información y creencia tiene motivos fundados para negar parte de los hechos.

El Tribunal Superior ordenó la suspensión de la vista y días después la demandante radicó una Moción en Oposición a la Moción de Sentencia Sumaria, acompañando la misma con dos declaraciones juradas. La primera de éstas es del Sr. Rafael Ramírez Chévere, quien ocupó el local contiguo al local ocupado por la demandante entre los años 1955 y 1958. En esencia, Ramírez Chévere declara que parte de las mejoras alegadamente llevadas a cabo durante el año 1957, existían antes del referido año. La declaración de la Sra. Rypar es sólo una copia de la que acompañó a la Moción de Suspensión.

El demandado-recurrido sometió como documentación adicional en apoyo de su moción de Sentencia Sumaria el permiso de construcción y una solicitud del certificado de construcción, con fechas de 18 de marzo de 1957 y 30 de abril de 1957, respectivamente.

Después de examinar la evidencia ofrecida en apoyo y en oposición a la solicitud de sentencia sumaria, el tribunal de instancia concluyó que no existe controversia genuina de hechos entre las partes sobre los siguientes extremos: que el local ocupado por la demandante existía desde antes de octubre de 1942; que desde el año 1956 dicho local tenía un canon máximo fijado por la Administración de $140.22; que el local no estaba arrendado el 17 de julio de 1946 y que fue arrendado por primera vez en el año 1950; que durante el año 1957 se llevaron a cabo un número de mejoras que se relacionan en la sentencia; que después de llevarse a cabo las mejoras se celebró un contrato de arrendamiento entre las partes por un canon de $500.00 mensuales; y que ninguna de las partes ha solicitado a la Administración que reajuste el alquiler pactado en el contrato. Las mejoras del

año 1957 que el tribunal encontró que se habían hecho corresponden esencialmente con lo alegado por el demandado.

El tribunal concluyó, como cuestión de derecho, que el demandado llevó a cabo "mejoras capitales distintas a actos de mera conservación o reparación rutinaria." El tribunal encontró que era de aplicación a los hechos de este caso la Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946, 17 L.P.R.A. secs. 181 y ss., el Art. 4(2)(f) del Reglamento de Inquilinato para Locales Comerciales del 1ro. de noviembre de 1946 y la Orden Administrativa Núm. 4 del 11 de junio de 1948.

A la luz de los mencionados preceptos el tribunal concluyó que el arrendador tenía derecho a cobrar el canon que las partes convinieron hasta tanto fuese reajustado por la Administración. Concluyó, además, que no habiendo controversia sobre los hechos, procedía dictar sentencia sumaria declarando sin lugar la demanda y así lo hizo.

■ La recurrente señala cuatro errores. En el primero arguye que erró el tribunal al dictar sentencia sumaria porque existía una controversia sobre los hechos y porque el tribunal entró "en la credibilidad de la prueba." Discute lo relativo a la importancia y costo de las reformas hechas al local. El tribunal concluyó que se hicieron mejoras capitales y no meros actos de conservación o reparación y estimamos que estuvo en lo cierto. Es cuestión de razón y además así lo permitía el Art. 5 del Reglamento de Inquilinato para Locales Comerciales de 1946, que las mejoras capitales son motivo permisible para aumentar el canon. A la inversa, también disponía dicho artículo que deterioros sustanciales eran motivos para rebajar el canon.(²)

_____

(²) Nos expresamos en pasado porque ese Reglamento de Inquilinato para Locales Comerciales de 1946 fue sustituido. Hoy rige el Reglamento de Inquilinato de 15 de diciembre de 1964. Véase 17 R.&R.P.R. secs. 186-25 y ss.

■ Es verdad que tomando como cierto—como debía hacerlo el tribunal de instancia tratándose de una sentencia sumaria—lo expresado por Ramírez Chévere en su declaración jurada y tomando también como cierto lo expresado por el demandado en la suya—a lo que no venía obligado el tribunal pero que podía hacerlo—resultan algunas discrepancias en lo relativo a las reformas hechas al edificio y a las fechas en que se llevaron a cabo. Pero a pesar de eso, tomando en cuenta las reformas de importancia hechas en el 1957 y especialmente la obra nueva, la ampliación de 375 pies cuadrados, eso resulta en mejoras capitales, dentro del significado que a esa frase daba el Reglamento en su Art. 5. ([3]) Habiéndose hecho una mejora capital no erró el Tribunal Superior al concluir que no había controversia en cuanto a los hechos materiales cuando al aplicar la ley a los hechos sobre los cuales no hay controversia el resultado sería el mismo aunque se aceptase como cierta la versión de los hechos de la parte que se opone a la sentencia sumaria. Éste es el caso de autos.

Los otros tres errores que señala la recurrente tienen que ver con las disposiciones del Reglamento y su interpretación. El tribunal de instancia no erró al aplicar la Orden Administrativa Núm. 4 aprobada por el Administrador en 11 de junio de 1948. En virtud de la autoridad concedida por la Ley de Alquileres Razonables allí se dispuso, en lo pertinente, como sigue:

"I. A partir de la fecha de vigencia de esta Orden. . . el alquiler máximo de un local de negocio que no estuvo arrendado durante el período comprendido entre 17 de julio de 1946 y 14 de mayo de 1948 y ha sido arrendado después de 14 de mayo de 1948, será, en el caso de:

A. Locales terminados de construir en o antes de 1ro. de octubre de 1942: . . .

---

([3]) "Se entiende por mejora capital aquella que resulta en una adición estructural o una rehabilitación completa." Reglamento de 1946, Art. 5(a)(1).

(3) el primer alquiler fijado a dicho local después de la última mejora o cambio fundamental efectuado en dicho local con posterioridad a . . . (el 1ro. de octubre de 1942)."

■ La recurrente sostiene que el "alquiler fijado" quiere decir el alquiler fijado por el Administrador y no por las partes contratantes. Entiende la recurrente, y estamos de acuerdo, que además de la Orden Administrativa Núm. 4 se aplica a este caso el Art. 4(b) del Reglamento de 1946 el cual dispone que el alquiler máximo de un local comercial arrendado después de julio 17 de 1946 será "el primer alquiler fijado a dicho local si es arrendado por primera vez después de julio 17 de 1946."

Con lo que no estamos de acuerdo con la recurrente es con su aseveración en el sentido de que "alquiler fijado" se refiera siempre a alquiler fijado por el Administrador. Nótese que el Art. 4(e) del propio Reglamento al referirse a "todos los casos comprendidos en el Art. 4(b)" dispone que si "el Administrador fija un alquiler máximo menor que el *fijado por el casero* la reducción tendrá carácter prospectivo." (Énfasis nuestro.)

El Art. 4(b) del Reglamento de 1946 era de aplicación a este caso en cuanto no confligiese con la Orden Administrativa Núm. 4 de 1948. Dicha Orden expresamente provee en su Sec. IV lo siguiente:

"IV. Todas las disposiciones del Reglamento de Inquilinato Para locales Comerciales que no estén en conflicto con las disposiciones de esta Orden son de aplicación a los locales de negocios aquí regulados."

Un examen del Art. 4 del Reglamento en relación con la Orden Administrativa Núm. 4 nos hace pensar que probablemente el propósito de incluir la Sec. I(A)(3) en la Orden fue equiparar los locales construidos antes del año 1942 que se alquilaran por primera vez después de julio 17 de 1946, con locales que hubiesen estado alquilados en o antes de dicha fecha, al efecto de establecer como canon permisible, hasta

tanto el Administrador lo modificara, el canon fijado por el arrendador después de una mejora capital.

 Una vez hechas las mejoras capitales el arrendador y el arrendatario tenían la facultad de reajustar el canon, o sea, de fijarlo mediante acuerdo mutuo. Si cualquiera de las dos partes no estaba conforme entonces podía recurrir a la Administración de Estabilización Económica para que ésta lo fijase. Véase *Aparicio* v. *Peñagarícano*, 84 D.P.R. 401 (1962).

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en este caso en 8 de marzo de 1966.*

