# 2008 DTA 4

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

HAYDÉE MENÉNDEZ JIMÉNEZ
Querellante-Peticionaria

v.

SANTANDER MORTGAGE CORPORATION
Querellado-Recurrido

Núm. KLAN-2007-00648

San Juan, Puerto Rico, a 30 de noviembre de 2007

Panel integrado por su Presidenta, la Juez García García, la Juez Varona Méndez y el Juez Cabán García

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Sra. Haydeé Menéndez Jiménez apela de una sentencia sumaria dictada por el Tribunal de Primera Instancia, mediante la que desestimó la querella instada por ésta, en reclamo de mesada, tras haber sido despedida de su empleo por Santander Mortgage Corporation (Santander). Por los fundamentos que discutiremos, se revoca la sentencia dictada y se devuelve al foro primario para que determine la suma adeudada a la apelante por concepto de mesada.

### I

La querella del título fue presentada por la apelante el 30 de enero de 2006. En ésta reclamó la suma de $12,666.66 por concepto de indemnización, al amparo de la Ley Número 80 de 30 de mayo de 1976, 29 L.P.R. A. Sec. 185, *et seq.*

El 9 de febrero de 2006, Santander sometió su contestación a la querella. Alegó, *inter alia,* que el despido de la querellante había sido justificado, por haber ésta violado el Manual de Normas Generales de Conducta de Santander Mortgage e incurrir en falta grave que conllevó disciplina progresiva correctiva previa.

Tras varios trámites procesales, el 21 de julio de 2006, Santander solicitó que se dictara sentencia sumaria, a la que se opuso la apelante. Por su parte, la apelante presentó otra solicitud de sentencia sumaria, a la que se opuso Santander.

Luego de considerar los escritos y argumentos esgrimidos por las partes, el foro apelado dictó sentencia sumaria el 9 de abril de 2007, notificada el 17 de abril de 2007. Mediante ésta, declaró con lugar la moción de sentencia sumaria que había presentado Santander y, en consecuencia, desestimó la demanda.

Para poder entender mejor la controversia, hacemos un recuento de los hechos, según fueron determinados por el foro de primera instancia en su sentencia.

La apelante comenzó a trabajar para Santander el 3 de diciembre de 2001, mediante contrato sin tiempo determinado. Hasta el momento de su despido, ocupó el puesto de Procesadora de Préstamos. Sus funciones incluían la atención de clientes para orientarlos sobre sus solicitudes de préstamos y según reconoció la Sra. Menéndez en la deposición que le fue tomada, su imagen ante el cliente y su relación con éste eran importantes. Además, en la sección de las destrezas requeridas para el puesto, contenidas en la descripción de deberes de la clase de Procesador de Préstamos, se establece la importancia de las buenas relaciones interpersonales con su equipo de trabajo, con clientes internos y externos, con el propósito de cumplir las metas asignadas.

La apelante admitió haber recibido copia del Manual del Empleado y demás normas de Santander y reconoció su firma en los acuses de recibo presentados durante su deposición. Además, admitió que el trato descortés o irrespetuoso hacia clientes de la institución constituye una falta que puede conllevar el despido en Santander. Asimismo, reconoció que de surgir una situación difícil al atender un cliente, el protocolo de

Santander dispone que se le refiera la situación a su supervisor o a la persona encargada. Aceptó también que recibió orientaciones de parte de Santander sobre la forma esperada de atender a los clientes.

Por otra parte, la apelante identificó su firma y admitió que recibió dos advertencias escritas previas a su despido, una de violación a los procedimientos establecidos, ineficiencia en el desempeño de sus funciones y/o negligencia, violación a las normas 33 y 35 del Manual de Normas de Conducta, la primera de 8 de agosto de 2005 y la otra del 16 de diciembre de 2005. Dichas advertencias previas se le habían hecho por no registrar su asistencia en horas de entrada y salida y período de alimentos, en violación a la norma 2 del Manual de Normas de Conducta.

El último incidente que precipitó el despido de la apelante fue una llamada telefónica hecha por un cliente, Lcdo. Arturo Guzmán, ■ a eso de las 4:50 P.M. Dicho cliente le informó a la Sra. Menéndez que enviaría por fax un documento que ya había transmitido previamente, pero no aparecía en el expediente. El Lcdo. Guzmán le pidió a la Sra. Menéndez que esperara a que se transmitiera el documento para asegurar que fuese recibido, para lo cual debía antes trasladarse hasta su oficina. La Sra. Menéndez le informó que su horario de trabajo finalizaba a las 5:00 P.M., pero que podía transmitir el documento sin que ella estuviera en la oficina, ya que en la mañana siguiente se lo entregarían. El cliente le manifestó a la apelante que eso era irresponsable de su parte. Ésta le colgó el teléfono al cliente. En la deposición, la apelante admitió que no transfirió la llamada a su supervisora ni a ninguna otra persona. Reconoció que si ella llamara a una oficina y le colgaban el teléfono, sentiría que estaban siendo descorteses hacia ella y se molestaría.

Posteriormente, el Lcdo. Arturo Guzmán se quejó de la conducta de la apelante, mediante comunicación de 21 de diciembre de 2005. ■

Del *"Modelo de Calidad de Santander"* que forma parte del Manual del Empleado que recibió la querellante, se dispone que el cliente es el *"centro de gravedad de Santander"*. En su sección de *"Estándar de Atención al Cliente en las Sucursales y Departamentos"* dicho manual dispone que el empleado debe escuchar atentamente la objeción del cliente, sin interrumpir ni incomodarse. Respecto al trato personal, las Guías de Atención al Cliente requieren mantener una actitud amable durante la entrevista, evitar mostrar impaciencia, deseos de terminar la conversación y que se debe generar una relación de empatía con el cliente. Además, debe demostrársele al cliente el deseo de atenderle con voz amable y cordial. En la Sección 2.5 se requiere que, al atender reclamaciones, el empleado tranquilice al cliente, se haga responsable de atender el problema para una fecha determinada, de seguimiento e informe al cliente una vez se resuelva el asunto.

El 27 de diciembre de 2005, la apelante fue despedida por Santander.

Partiendo de sus determinaciones de hechos, de la ley y doctrinas jurisprudenciales sobre despido injustificado, el foro de primera instancia expresó que para que Santander pueda rendir sus servicios de manera eficiente y competitiva necesita confiar plenamente en que su personal brinde la mejor atención a sus clientes. Sostuvo además, que las normas y reglas de Santander eran razonables, así como la proporcionalidad de las sanciones impuestas. Expresó que *"para una compañía como Santander Mortgage, el trato irrespetuoso y descortés hacia un cliente constituye el pecado mortal al buen y normal funcionamiento de esa clase de negocio"*, porque *"dicha compañía no puede tolerar conducta contraria a ese principio fundamental"*. Asimismo concluyó que, a pesar de que la querellante conocía las antes citadas normas y recibió orientaciones con relación a la atención que hay que brindarle al cliente, ésta violó las normas fundamentales de Santander Mortgage sobre el trato y atención al cliente, al colgarle el teléfono al cliente Lcdo. Arturo Guzmán.

Por último, el foro sentenciador concluyó que aun cuando la falta antes descrita, por su gravedad, era suficiente para justificar el despido de la querellante, dicha falta no fue la única infracción cometida por la querellante durante su último año de trabajo en Santander, ya que se le habían hecho dos advertencias escritas

previas en su expediente, de agosto de 2005 y de diciembre de 2005. Rechazó el argumento de la apelante, en el sentido de que, al tratarse éstas de faltas distintas y no relacionadas con la conducta que precipitó su despido, al razonar que la Ley Núm. 80 no establece que todas las violaciones tienen que ser de la misma naturaleza, para que se justifique el despido de un empleado.

## II

La Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. sec.185a *et seq*. (en adelante la Ley Núm. 80), procura proteger a los empleados de cualquier industria, comercio o negocio en Puerto Rico de los efectos adversos de los despidos injustificados. A la vez que otorga unos remedios consubstanciales con los daños causados por un despido injustificado, busca desalentar la incidencia de este tipo de despido. 1976 *Leyes de Puerto Rico*, pág. 268. Así, la ley dota al empleado despedido sin justa causa del derecho a recibir de su patrono el sueldo correspondiente a entre dos y seis meses por concepto de indemnización y una indemnización progresiva adicional equivalente a entre una y tres semanas por cada año de servicio. 29 L.P.R.A. sec. 185a; *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. 630, 642-643 (1994). Esta compensación pretende *"brinda[r] a los trabajadores que han sido despedidos sin justa causa la oportunidad de disfrutar de una indemnización que les permita suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo". García v. A.E.E.L.A.,* **2007 JTS 34**, res. el 20 de febrero de 2007; *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 375 (2001).

Para ser acreedor a la protección y a los beneficios que ofrece la Ley Núm. 80, *supra*, el empleado separado de su cargo debe cumplir con los siguientes requisitos: (1) la existencia de una relación obrero-patrono en algún negocio, industria o sitio de empleo; (2) que la labor rendida sea remunerada; (3) que el trabajador haya sido contratado sin tiempo determinado; (4) que el empleado haya sido despedido sin que medie justa causa. C. Zeno Santiago y otros, *Tratado de Derecho del Trabajo*, San Juan, Puerto Rico, **Publicaciones JTS**, 2003, Tomo I, pág. 98; Departamento del Trabajo y Recursos Humanos, *Guía revisada para la aplicación de la Ley Núm. 80,* de 30 de mayo de 1976, enmendada, 21 de septiembre de 2000, págs. 27-8. Con respecto a las clases de empleados que están cobijados por la ley, ya se ha resuelto que, debido a que no limita el concepto de empleado, la Ley Núm. 80, *supra,* es de aplicación a ejecutivos, administradores y profesionales. *García v. A.E. E.L.A., supra; Hull Dobbs Co. v. Tribunal Superior*, 82 D.P.R. 77, 84-5 (1961).

La Ley Núm. 80 no favorece que el patrono despida al empleado como sanción por una primera falta o infracción, salvo cuando por la gravedad y potencial de agravio de la conducta en cuestión se haya puesto en riesgo, el orden, la seguridad o la eficiencia del establecimiento. *Miranda v. Hosp. San Pablo,* **2007 JTS 69**, res. el 29 de marzo de 2007; *Rivera v. Pan Pepín, Inc.*, res. el 21 de abril de 2004, **2004 JTS 68**; *Jusino et als. v. Walgreens*, 155 D.P.R. 560 (2001); *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 D.P.R. 223 (2001); *Delgado Zayas v. Hosp. Int. Med. Avanzada,* ante; *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979).

En cuanto al procedimiento a seguir, en una acción por despido injustificado de un empleado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción. Una vez que el patrono interpone como defensa afirmativa que ha mediado justa causa para el despido, le corresponde a éste entonces probar, por preponderancia de la prueba, que el mismo estuvo justificado. *Miranda v. Hosp. San Pablo, supra; Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364 (2001), págs. 378-379.

En nuestro ordenamiento, el contrato de servicios que formaliza la relación empleado-patrono representa en un gran número de casos, para los obreros y sus dependientes, el único medio de sustento económico. *Díaz Fontánez v. Wyndham Hotel Corp.*, 155 D.P.R. 364 (2001). El rompimiento de dicha relación conlleva, para muchas personas, la pérdida de tal sustento y del único medio de acceso a los artículos y servicios indispensables del diario vivir. *Id.*, a la pág. 12. Por ello, existe un interés apremiante del Estado en regular las relaciones obrero-patronales, que se enmarca dentro de una política pública dirigida a proteger los derechos de

los trabajadores. *Id.*; *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986). En atención a dicho propósito, la Ley Núm. 80, *supra*, debe siempre interpretarse de manera liberal y favorable al empleado. *Rivera v. Pan Pepín*, **2004 JTS 68**, res. el 21 de abril de 2004; *Jusino et als. v. Walgreens*, 155 D.P.R. 560 (2001); *Belk Arce v. Martínez*, 146 D.P.R. 215 (1998); *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407 (1975).

A tenor de lo anterior, el legislador incorporó el estándar de "*justa causa*" como limitación a toda acción de despido de parte del patrono. Así pues, la justificación de un despido se evalúa a la luz de las disposiciones de la Ley Núm. 80, *supra*. Específicamente, el Artículo 2 de dicha Ley, 29 L.P.R.A. § 185b, dispone que se entenderá como "*justa causa*" para el despido de un empleado lo siguiente:

*"(a) que el obrero siga un patrón de conducta impropia;*

*(b) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo de forma tardía y negligentemente o en violación de la normas de calidad del producto que se produce o maneja por el establecimiento;*

*(c) violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado;*

*(d) cierre total, temporero o parcial de las operaciones del establecimiento;*

*(e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público;*

*(f) reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido."*

No se considerará despido por justa causa aquél que se hace por mero capricho del patrón o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Véase además Díaz Fontánez v. Wyndham Hotel Corp.*, *supra*, a la pág. 13.

En *Secretario del Trabajo v. I.T.T.*, *ante*, pág. 542, el Alto Foro expresó que: [l]a Ley no pretende ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa.

Ello así, ya que el patrono "*tiene derecho a evaluar a su personal, a base de los valores morales y del orden público prevalecientes en Puerto Rico, cuando el cumplimiento o violación de los mismos puede mantener o alterar el buen y normal funcionamiento de la empresa*". (Énfasis nuestro.) *Miranda v. Hosp. San Pablo, supra; Rivera v. Pan Pepín, supra; Secretario del Trabajo v. G.P. Industries Inc., ante.*

Una falta o acto aislado puede dar lugar al despido del empleado si ésta es de tal seriedad o naturaleza que revela una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar su reiteración para separarlo de su puesto. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994); *Secretario del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979).

**Sobre la sentencia sumaria**

La moción de sentencia sumaria es aquélla que solicita que se dicte sentencia a favor del promovente, basándose en la prueba que a la moción se acompaña, sin necesidad de que se celebre vista en su fondo, y en casos donde en realidad no exista controversia real sobre ningún hecho material en el caso. Es decir, que si el juzgador estima que no hay hechos medulares en controversia, y el pleito únicamente presenta cuestiones de derecho, podrá disponerse del asunto mediante sentencia sumaria. *Pérez v. Concepción*, 104 D.P.R. 83 (1975); *Padín v. Rossi*, 100 D.P.R. 259 (1971); *R & R Shoe Corp. v. García Rodríguez*, 95 D.P.R. 571 (1967). El mecanismo de sentencia sumaria responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea aplicar el derecho solamente. *Jusino et als. v. Walgreens, supra; Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720-721 (1986); *Roth v. Lugo*, 87 D.P.R. 380, 392 (1963).

**III**

En *Rivera Torres v. Pan Pepín, supra,* el Alto Foro consideró una controversia, en la que discutió la procedencia del despido, tras haberse cometido una falta por el empleado. En aquel caso, el empleado dejó cuatro (4) unidades de productos *expirados* en las góndolas. No obstante, el Tribunal Supremo expresó que "*si bien es una falta seria cuya reiteración podría afectar grandemente la operación e imagen de la empresa— por sí sola no es una omisión que amerite el remedio radical de despedir al empleado. O sea, si evaluamos la "seriedad de la falta"*, no nos parece que ésta (siendo la primera vez que se comete por el recurrido) sea una de tal "*naturaleza que revele una actitud o un detalle de su carácter [del vendedor], tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar su reiteración para separarlo del establecimiento*".

Por último, resolvió el Tribunal Supremo que *"[e]l mero hecho de que el patrono haya clasificado como "falta grave" determinada conducta, es insuficiente, sin más, para despedir a un obrero que incurre por primera vez en dicha conducta. Independientemente de la etiqueta con la que el patrono catalogó la falta incurrida por el recurrido, la naturaleza de ésta -dentro del contexto de este caso-, no se ubica dentro del criterio de gravedad que hemos reconocido en nuestra jurisprudencia para justificar un despido a la primera falta.*" Cf. *Jusino Figueroa v. Walgreens of San Patricio, supra*; *Delgado Zayas v. Hospital Interamericano, supra; Autoridad de Edificios Públicos v. Unión Independiente de Empleados*, 130 D.P.R. 983 (1992); *Báez v. Cooper Labs.*, 120 D.P.R. 145 (1987); *Secretario del Trabajo v. I.T.T., supra.*

A tenor, se determinó que el patrono debió aplicar una sanción, que pudo incluir hasta el despido, a base de: 1) la seriedad de la falta; 2) circunstancias agravantes o atenuantes; y 3) récord del empleado. Razonó el Tribunal que, habida cuenta de que dentro de un contrato de empleo, el manual de reglas aprobado por el patrono es parte integral de dicho contrato, el recurrido tenía derecho a que se tomaran en cuenta esos factores al momento de evaluarse su despido. *Véase Santiago v. Kodak Caribbean*, 129 D.P.R. 763 (1992); Charles Zeno Santiago y Víctor M. Bermúdez, *Tratado de Derecho del Trabajo*, Tomo I, a la pág. 109 (**Publicaciones J.T.S.,** 2003). Por ello, dispuso el Tribunal que era preciso que se considerara "*ausente una expresión específica y clara en el Manual de Normas en cuanto a que dicha falta acarreaba el despido automático, era el derecho del empleado que se tomaran en cuenta estos factores para determinar si el despido debía o no llevarse a cabo*". En vista de que el recurrido fue despedido de manera inmediata, y que no se sopesaron los anteriores elementos, se resolvió que la sanción de despido fue irrazonable y, por ende, injustificada bajo el palio de la Ley Núm. 80, *supra.*

La Guía Revisada para la Aplicación de la Ley Núm. 80 dispone, al interpretar la disposición del Artículo 2 de la referida Ley, que:

*"...en circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden dar base al despido justificado, ya que pueden poner de manifiesto una clara e indubitable condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible de cambio, ponen de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado".* Departamento del Trabajo y Recursos Humanos, Guía Revisada para la Aplicación de la Ley Núm. 80, pág. 32 (2000).

Hemos hecho un análisis de los hechos, a la luz de la exposición normativa que precede. La apelante inequivocamente admitió haber colgado el teléfono a un cliente, aunque expresa, a manera de atenuante, que dicho cliente la insultó en tres ocasiones, sin importarle que ella se excusaba con él. ■ Asimismo, declaró bajo juramento que, una vez colgó el teléfono, habló con su supervisora y le explicó lo ocurrido, a lo que ésta le respondió: *"no te preocupes, que yo me comunico con el cliente, te puedes ir tranquila".*

La referida conducta fue evaluada como una violación de la norma 10, que conlleva en su primer incidente advertencia escrita o despido, dependiendo de la gravedad de la falta y el despido en el segundo incidente. Los incidentes previos por los cuales recibió amonestación escrita la apelante fueron dos. Uno de éstos se refiere a no haber registrado su horario según las normas, lo que implicaba una violación a la norma número 2. Dicha norma conlleva como sanción advertencias escritas hasta el tercer incidente y despido al cuarto incidente. La amonestación escrita fue hecha el 16 de diciembre de 2005; es decir, algunos días antes del incidente que dio lugar al despido de la apelante.

Un incidente previo, de 8 de agosto de 2005, provocó la primera amonestación escrita de la apelante, debido a una discrepancia en el salario de un cliente que surgía de una verificación telefónica de empleo. Se le notificó a la apelante que dicha discrepancia se debía a la falta de corroboración para asegurar que el cliente cumplía con los requisitos necesarios para la aprobación de un préstamo. De la amonestación escrita, se desprende que dicha conducta constituia una desviación de las normas 33 y 35 del Manual de Normas Generales de Conducta y Trabajo. Del referido Manual surge que la desviación a la norma 33 conlleva una advertencia escrita en los primeros tres incidentes y el despido al cuarto incidente. La desviación a la norma 35 conlleva, por su parte, una advertencia escrita en los dos primeros incidentes y el despido al tercer incidente.

El foro de primera instancia evaluó los incidentes previos y la conducta que dio lugar al despido, la cual fue clasificada como grave por la parte apelada. En virtud de ello, estimó que la apelante había violado "*reiteradamente las reglas y reglamentos establecidos por el patrono*", por lo que consideró que era justificado el despido.

Del propio manual de normas de Santander, no surge que los dos primeros incidentes hayan sido de naturaleza grave. El último incidente podría dar lugar al despido en su primera falta, dependiendo de la gravedad de la falta. Ahora bien, dicho incidente no revela, de por sí, una actitud no susceptible de cambio. Por el contrario, el reconocimiento de la falta incurrida, precisamente revela una actitud responsable ante la falta incurrida. Tampoco podemos atribuirle a dicho incidente la gravedad que ameritara, en su primera infracción, el despido. Más aún, cuando de los hechos surge que el referido incidente no impidió que se culminara la transacción.

En virtud de lo anterior, no podemos coincidir con el foro apelado, al concluir que los incidentes ocurridos pusieron en riesgo el orden y la eficiencia en el normal funcionamiento del patrono. Lo cierto es que la actuación de la apelante no fue tan grave como pretende proyectar la parte apelada. La desproporción entre su actuación y la medida disciplinaria tomada por el patrono resulta patente.

Por otra parte, en virtud de la Ley 80 es necesario que el trabajador observe un patrón de conducta impropia

y desordenada para justificar que su patrono lo despida. La conducta impropia en el curso de su trabajo debe ser reiterada. Un acto aislado, como regla general, no justifica el despido ni constituye base suficiente para admitir evidencia de hábito. Para establecer hábito o costumbre se requiere *uniformidad y regularidad.* Véase, *Guía Revisada para la Interpretación y Aplicación de la Ley 80 de 30 de mayo de 1976*, según enmendada, (2000), publicada por el Departamento del Trabajo y Recursos Humanos, página 32. Dada la naturaleza diversa y no reiterada de las faltas previas cometidas, la parte apelada no logró establecer la uniformidad y regularidad requeridas, para justificar el despido.

Por los fundamentos discutidos, se revoca la sentencia apelada y se devuelve al Tribunal de Primera Instancia para que compute el monto de la mesada que deberá pagar Santander a la parte apelante.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones